59335. ATLANTA METRO TAXICAB GROUP, INC. et al. v. BEKELE.

McMurray, Presiding Judge.

Prior to its incorporation in November, 1975, Atlanta Metro Taxicab Group was an unincorporated association formed for and engaged in the activity of providing general claim services to a group of small taxicab companies in the Atlanta metropolitan area. Atlanta Metro Taxicab Group, Inc. and its predecessor association of taxicab companies sought to achieve the status of a self-insured group for insurance purposes to meet the requirements of the state law so as to avoid the high cost of the purchase of insurance from insurance companies on an individual company basis. Richard F. Hewatt and Richard F. Hewatt, Jr., were two of the directors of the incorporated group, becoming president and vice president and general manager respectively.

In January, 1976, Solomon Bekele, doing business as Rapid Taxi Cab Company, sought to purchase insurance for the taxicabs of Rapid that satisfied the mandatory insurance provisions of the City of Atlanta ordinances and the Georgia Motor Vehicle Accident Reparations Act, otherwise known as the no fault insurance law. He approached the general manager of Atlanta Metro Taxicab Group, Inc., and an oral agreement was entered into whereby Metro agreed to provide Rapid's cabs with insurance coverage that satisfied the no fault law.

Prior to becoming a self-insurer, Metro Group had entered into a contract with American Southern Insurance Company by obtaining a basic automobile liability and physical damage policy from 10-24-75 to 10-24-76, by insuring all owned public or delivery autos and by endorsement listing nine separate cab companies in addition to the insured "Atlanta Metropolitan Taxicab Group, et. al" as

"additional named insureds." The insurance agreement with American Southern required, for a fee, the issuance of the automobile liability insurance provided same in no way caused any loss to the insurer whatsoever. The group agreed to provide the insurer with an irrevocable letter of credit in the amount of $50,000; to establish claim procedures, licensed adjusters and attorneys for the handling of automobile liability claims; to settle and pay claims in accordance with the terms and conditions of any evidence of automobile liability insurance issued to the group by the insurer; to furnish the insurer a copy of all loss notices and/or accident reports; a quarterly listing of all paid and outstanding claims and their amounts; a quarterly statement of financial condition; and the insurer maintained a right to cancel policies or any other evidences of insurance issued by it, "subject to the cancellation terms of the policy," the same to be continued in force indefinitely but which might be terminated by either party giving the other 60 days prior written notice.

Hewatt, the general manager, contends that his agreement with Bekele resulted in Rapid's taxicabs being covered as per their agreement under the American Southern policy until such time as Metro Group became a self-insurer, after October 24, 1976. Hewatt also contends that the group agreed to provide Bekele insurance coverage by payment of the sum of $16 per vehicle per week by listing the vehicles by identification numbers, years, make, car and tags and the drivers of those vehicles, and that Bekele, for Rapid Taxi Cab Company, agreed to the terms outlined to gain insurance coverage, that is, by becoming a member of the group; hence, they would also become a member of the insurance policy issued by American Southern Insurance Company. Thereafter, when the incorporated group became a self-insurer, that is, when it was successful in having a self-insurance certificate granted to it by the State of Georgia on June 7, 1976, Rapid Taxi Cab Company's drivers and vehicles were covered as required by law, and Metro Group entered some 79 accident claims for Bekele (Rapid) by investigating and covering as necessary, including the furtherance of defense and litigation and the defraying of claims and litigation expenses in behalf of Bekele during a two year period of membership in the Metro Group. Bekele was then terminated as a member of the group for failing to pay dues.

On February 28, 1978, Bekele, individually and doing business as Rapid Taxi Cab Company, sued Atlanta Metro Taxicab Group, Inc., and Richard F. Hewatt ("Senior") and Richard F. Hewatt, Jr. ("Junior") for damages seeking to recover all monies paid as premiums on insurance in the amount of $86,612 with interest, punitive damages in the sum of $200,000, and reasonable attorney fees due to defendants' bad faith in the premises. The petition was in

four counts, contending in Count 1 that the plaintiff never received any insurance coverage for the funds paid under said arrangement, the insurance policy and self-insurance being in contravention of express statutory provisions, illegal and against public policy, and void ab initio. Count 2 alleges that the defendants, as unauthorized insurers, had issued the void contracts to the plaintiff which were voidable at the option of the plaintiff and that the defendants may not in equity and good conscience retain the traceable funds which were received for the so-called insurance. Count 3 sought to recover for the tortious conduct of the defendants by reason of the illegal insurance allegedly issued by the defendants. Count 4 sought to recover for the fraud of the defendants by reason of same. Plaintiff also sought injunctive relief to restrain and enjoin the defendants from disbursing or otherwise diverting to their own use the funds paid by plaintiff, a temporary receiver to take possession of the property and for the court to impress a constructive trust and impose an equitable lien in plaintiff's favor against the defendants and each of them as to the property referred to as plaintiff's property.

After considerable discovery plaintiff moved for a partial summary judgment in plaintiff's favor and against the defendant Atlanta Metro Taxicab Group, Inc., for the return of illegally collected insurance premiums, and if the partial summary judgment is not rendered in plaintiff's favor upon the issues raised in this motion and a trial is necessary as to these issues, the trial court upon consideration of the motion, by examining the pleadings and evidence before it and by interrogating counsel, ascertain what material facts are actually and in good faith controverted and direct such further proceedings in the case as are just. The trial court after a hearing issued its order in brief as follows: ". . . there is no genuine issue as to the basic material facts regarding the plaintiff's claim as to liability . . . plaintiff is found to be entitled to recover of the defendant in some amount. The issue of damages is to be yet determined as a matter of fact." Defendants appeal. *Held:*

An examination of the policy of insurance found in the record and the testimony in relation thereto shows that Rapid Taxi Cab Company was never named by amendment to the nine other taxicab companies listed by endorsement as "additional named insureds."

Although an issue of fact remains as to what the plaintiff was to receive for the membership fee of $16 per vehicle per week, it is uncontroverted that during the time that coverage was provided by a "fronting agreement" with American Southern Insurance Company, coverage under the policy issued by that company was allegedly to be a portion of the consideration to be received by plaintiff. Construction of the unambiguous insurance contract and

uncontroverted testimony that plaintiff's vehicles were not registered as owned by Atlanta Metro Taxicab Group, Inc., during the time this policy was applicable shows clearly that plaintiff's vehicles were not covered by the American Southern policy as agreed between the parties. Furthermore, contracts for insurance must be in writing and may not be partially parol. *Hawkins Iron &c. Co. v. Continental Ins. Co.,* 128 Ga. App. 462, 464 (3) (196 SE2d 903).

After the issuance of the certificate of self insurance to Metro on June 7, 1976, plaintiff was purportedly covered thereby. Yet the evidence is clear that during the initial period following the issuance of this certificate plaintiff's cabs were not registered in the name of Metro. There is no evidence that a change of title ever occurred so as to bring plaintiff's cabs within the coverage of Metro's certificate of self insurance. See in this regard Code Ann. § 68C-602 (Ga. L. 1977, pp. 1014, 1030) formerly Code Ann. § 92A-616 (Ga. L. 1951, pp. 565, 576; 1956, pp. 543, 562; repealed Ga. L. 1977, pp. 1014, 1033).

In summation, the evidence is that over a protracted period of time plaintiff paid "dues" for insurance coverage on his cabs and made claims which were and continue to be serviced by Metro. During a portion, if not all of the time involved, there was no enforceable insurance and there was no compliance with the requirements of the Georgia Motor Vehicle Accident Reparations Act (Code Chapter 56-34B), particularly Code Ann. § 56-3403b (Ga. L. 1974, pp. 113, 116; 1975, pp. 1202, 1204).

To the extent that the arrangement entered into was a knowing contravention of public policy and has been executed as opposed to remaining as an executory contract, it will be left to stand by the courts. *Jones v. Faulkner,* 101 Ga. App. 547, 548 (114 SE2d 542). Furthermore, the five elements of fraud have not been established by uncontradicted evidence. See in this regard *Martin Burks Chevrolet, Inc. v. McMichen,* 136 Ga. App. 845, 847 (222 SE2d 633).

The trial court erred in concluding that plaintiff is entitled to some amount by the evidence and in granting a partial summary judgment in favor of plaintiff and against defendant Atlanta Metro Taxicab Group, Inc.

*Judgment reversed. Banke, J., concurs. Smith, J., concurs in the judgment only.*

ARGUED FEBRUARY 4, 1980 — DECIDED JUNE 11, 1980.

*I. J. Parkerson,* for appellants.
*Harry W. Pettigrew, David R. Trippe,* for appellee.